# CITY OF LA SALLE
## v.
## THE MATTHIESSEN & HEGELER ZINC CO.

1. CITIES, TOWNS AND VILLAGES—TOWN PLAT.—The acknowledgment and recording of a town plat vests the legal title to the ground embraced by the streets and alleys in the corporation. The title may perhaps revert to the former owner on the destruction of the corporation or on the abandonment of the ground for the purpose of the streets and alleys. But until the estate is thus defeated, the estate is as completely out of the former owner as if he had made an absolute and unconditional conveyance.

2. WHERE PLAT NOT ACKNOWLEDGED.—The fact that the plat of a city was not acknowledged by the canal trustees would not affect its operating as a conveyance in fee, to the city, of the streets and alleys.

3. STREETS—ENCROACHMENTS UNDER SURFACE.—Appellee claimed the right, as the owner of a coal shaft located outside the city limits as originally platted, and the owner by subsequent purchase of coal underlying certain lots and blocks in the city, without the consent of the city authorities, to enter into, mine and remove the veins of coal underlying the streets and alleys of the city, for the purpose of connecting the shaft with the coal owned by appellee under such lots and blocks. *Held*, that the city, as owner in fee and in possession of the land within the limits of the streets, has vested in it by law the power to prevent encroachments upon them by individuals, and is not limited. in the exercise of this power, to the surface of the ground; that the sale of the coal by the lot owner to appellee, and the right to mine and remove the same, can not have the effect of authorizing an entry into the lands of others, either upon or below the surface.

APPEAL from the Circuit Court of La Salle county; the Hon. J. McROBERTS, Judge, presiding. Opinion filed February 5, 1885.

The appellee filed its bill in the circuit court against the appellant and others, in which it sets forth its incorporation, and that it was engaged in the city of La Salle in the manufacture of zinc spelter and sheet zinc, and for the purpose of obtaining the coal for carrying on such business had sunk a coal shaft, and was then mining coal for use in its manufactory and raising it through such shaft.

The bill then avers: That the city of La Salle is duly incor-

porated under the laws of the State of Illinois, and that the original plat of said city is located upon section 15, in township 33 north, range 1, east of the third principal meridian; that the original plat of said city of La Salle was made by the trustees of the Illinois and Michigan Canal, and duly certified by them to be accurate, on the 18th day of June, A. D. 1838, and the same was filed for record in the recorder's office of La Salle county, June 23, 1838, under the power conferred upon such trustees by the laws of said State; and that said trustees in making said plat of said city, located thereon certain streets and alleys for the use and benefit of the inhabitants of said city of La Salle, and that said streets and alleys were dedicated by said trustees to the public, and the title thereof became and was vested in said city of La Salle, upon its incorporation, for the uses and purposes designated by said canal trustees, and for no other purpose whatsoever. That by virtue of such dedication the said city of La Salle was vested with the right to use said streets and alleys as public highways, for the purposes for which they were thus dedicated, and that they have no right to use the same for any other purpose whatsoever.

And that such streets and alleys were dedicated as aforesaid by the said canal trustees to the said city of La Salle for the use of the public at large, and more especially for the use of the owners of the lots and blocks adjoining such streets and abutting thereon, and the lots and blocks upon which such alleys were situated and located; and that subject to the right of the public to use the same as public highways, such streets and alleys became and were appurtenant to the adjoining owners of lots in said city of La Salle.

"Your orator would further represent unto your honors, that by purchase from the rightful owners thereof your orator has become seized in fee simple of all the bituminous and stone coal, with the right to mine the same, underlying the following described lots and blocks in the city of La Salle." After describing the lots, the bill further sets forth that the complainant is desirous of mining the coal under said lots from and through its shaft, and in order to do so it is necessary to make certain entries and passage ways from lot to lot and

block to block along, beneath and underneath said streets, thereby connecting the coal under the lots with the shaft, and that such mining under the streets will not interfere with the surface of the streets, nor in any manner impair the usefulness of the same as public ways; and avers the right and intention to so mine under said streets and remove the coal from the street for the purpose stated, and if not allowed so to do the coal under the lots will be lost to it, but that the city claims to own such coal under the streets with the power to sell the same, and threatens to prevent complainant thus mining under said streets, and to bring suits against it, if the complainant should proceed as it desires to do.

The bill further alleges that in 1866 the city of La Salle entered into a contract with Michael Byrne, Richard Cody and Nicholas Duncan, in which it granted them the right to mine all the coal underlying the streets and alleys in the original plat of the city, which contract the said Byrne (the said Cody and Duncan having died since the date of said contract) claims to be still in force, and that if complainant should mine such coal he will insist upon its paying him for the value thereof; avers that said contract is invalid for lack of power in the city to thus sell and dispose of the coal, and in order to prevent a multiplicity of suits, it is necessary that the rights of the various parties should be determined in equity. Makes the city of La Salle, the said Byrne, and the heirs at law of Cody and Duncan, defendants to the bill and asks that the complainant may be decreed the free and unobstructed right to run said entries and passage ways under and along said streets for the purpose aforesaid, and that said Byrne and his associates be enjoined from removing any of said coal under said contract, and that on final hearing said injunction be made perpetual, and for general relief.

The city of La Salle appeared and answered that part of the bill setting up its contract with Byrne, Duncan and Cody, admitting its execution and invalidity as claimed, and demurred to the residue of the bill. The bill was taken as confessed by the other defendants, the demurrer of the city overruled, and a decree entered in accordance with the averments and prayer

of the bill, giving the complainant the right to mine and re-move the coal from the streets and alleys, doing no injury to the surface, and enjoining the defendants from in any way interfering with the complainant in so doing.

The city alone appeals.

Mr. G. S. Eldridge, for appellant; as to fee in the streets passing by dedication to the city, cited Trustees v. Haven, 11 Ill. 554; Nevins v. R. R. Co., 21 Ill. 252; Hunter v. Middle-ton, 13 Ill. 50; Stephani v. Brown, 40 Ill. 431; Chicago v. McGinn, 51 Ill. 273; R. R. Co. v. Hartley, 67 Ill. 442; St. John v. Quitzow, 72 Ill. 336; Gebhardt v. Reeves, 75 Ill. 301; Chi-cago v. Rumsey, 87 Ill. 349; Stetson v. C. & E. R. R. Co., 75 Ill. 75, § 2.

Mr. E. F. Bull and Messrs. Leland & Gilbert, for appel-lee; cited R. S. 1829, p. 184; R. S. 1833, p. 600; R. S. 1874, § 5; Ch. 109, § 3; Canal Trustees v. Haven, 11 Ill. 554; Schur-meir v. R. R. Co., 10 Minn. 104.

The grant is in trust for street and alley purposes and for no other use or purpose: City of Alton v. Ill. Trans. Co., 12 Ill. 60; City of Jacksonville v. Jacksonville Ry. Co., 67 Ill. 540; City of Quincy v. Jones, 76 Ill. 231; Stack v. City of East St. Louis, 85 Ill. 377; Kreigh v. City of Chicago, 86 Ill. 407.

Pillsbury, J. Neither of the parties to this cause ques-tions the correctness of that portion of the decree of the cir-cuit court declaring the contract of the city with Byrne and others void, and enjoining them from claiming any rights under it. We are therefore not called upon to inquire whether, under the laws of this State, the city has power to sell or dispose of any coal or other mineral underlying the streets and alleys in the city, or to mine the same for its own profit.

The simple question here presented is whether the appellee has the right, as the owner of a coal shaft located outside the city limits as originally platted, and the owner of coal under-

lying certain lots and blocks in the city, without the consent of the city authorities, to enter into, mine and remove the veins of coal underlying the streets and alleys of the city, for the purpose of connecting the shaft with the coal owned by complainant under such lots and blocks.

It is not very clear what interest the appellee claims in the streets upon which it bases its right to cut tunnels a.ong and across the streets and to remove the coal therefrom in order to mine the coal from the lots and blocks described; but if we understand its position, it maintains that by making, certifying and recording the plat, by the canal trustees, the municipality became invested with the title to the streets and alleys marked thereon and dedicated to public use, as a trustee for the adjoining lot owners, as well as for the public; and such lot owners have an equitable title in and to the soil of the streets, in the nature of a resulting trust, and, subject to the public use of such streets as public ways, such lot owner has absolute dominion over the soil within the limits of such public thoroughfares, and may remove the subjacent soil therefrom, for his own benefit, if it can be done without detriment to the public use of the surface, and is necessary for the proper enjoyment of his estate in the adjoining lots and blocks. Is this claim well founded?

The effect of a plat properly acknowledged and recorded by the proprietor of the lands, was passed upon by the Supreme Court in the case of the Canal Trustees v. Haven, 11 Ill. 554, where it is said: "Under the provisions of this statute the legal title to the land embraced by a street is vested in the corporation of the town or city for the use and benefit of the public. It is not in the power of the proprietor of the lots to transfer the fee in the streets to the grantee. The acknowledgment and recording of the plat has all the force of an express grant. It operates by way of estoppel, and concludes the former owner, and all claiming through or under him from asserting title. It is a solemn dedication of the ground to the corporation, to be held in trust for the uses and purposes of the public. In the recording of the plat the fee in the street *eo instanti,* passes to the corporation."

In Hunter v. Middleton, 13 Ill. 50, where a like question was made, the court said: "We adhere to the opinion expressed in Canal Trustees v. Haven, *supra*, that the acknowledgment and recording of a town plat vests the legal title to the ground embraced by the streets and alleys in the corporation. The legal effect is precisely the same as if he had made a conveyance directly to the corporation. The latter holds the legal estate for the benefit of the public. The title may perhaps revert to the former owner on the destruction of the corporation, or on the abandonment of the ground for the purpose of the streets and alleys. But until the estate is thus defeated, the estate is as completely out of him as if he had made an absolute and unconditional conveyance."

This doctrine has been recognized and re-affirmed in subsequent cases, as in Railroad v. Hartley, 67 Ill. 442; Chicago v. McGinn, 51 Ill. 273; St. John v. Quitzow, 72 Ill. 334; and in Gebhardt v. Reeves, 75 Ill. 301.

It is urged that, as the plat of the city of La Salle was not acknowledged by the canal trustees, it did not operate as a conveyance in fee to the city of the streets and alleys.

This position is fully answered by the case of City of Chicago v. Rumsey, 87 Ill. 349, which was a suit brought by Rumsey against the city of Chicago to recover damages by reason of the construction of a tunnel in the street in front of his property abutting upon the street. By its construction the intervening space between the property and the tunnel was only sixteen feet, and the sidewalk was reduced to eight feet in width. The property in question was a part of the canal trustees' subdivision, and the street was indicated by the plat made by the trustees. Upon the question under consideration the court held, that "had the land belonged to any party other than the State, this would have been necessary to vest the fee in the streets. But that the State being sovereign, no acknowledgment could add to the force and effect of the plat in this regard;" and further (p. 354): "But the statute of 1833 has one very important bearing upon the question. It shows that it was a policy of the State to vest the fee of the street in cities, towns, etc., for the public use, divested of all

City of La Salle v. Matthiessen & Hegeler Zinc Co.

claims of private ownership. This being the declared policy of the State, the presumption would follow that no discrimination in this regard should exist between cities, towns, etc., laid out by the State and those laid out by other proprietors. A general policy being once established, it devolves upon those claiming exceptions to clearly prove their existence. No reason is perceived why an exception should have been desirable which would have left the legislature with less unquestioned authority to control the improvement of the street for public purposes in the cities, towns, etc., of which the State is the proprietor, than in others, and the circumstances connected with the sale and conveyance of canal lots have no tendency to prove that such exception was intended. The commissioners had no authority, by law, to sell anything but lots where towns were laid out. And the patent issued by the governor could only include what the commissioners sold."

The court also said in the same case: "We are satisfied that the fee of La Salle street adjacent to Rumsey's land is either in the State or in the city of Chicago, for the use of the public, and therefore Rumsey can have no legal interest in it except in common with the public."

These authorities would seem to be conclusive against the claim advanced that the owners of the lots and the appellee as owner of the coal underlying the lots, have a present legal interest in the streets of the city different from that of the general public. There is nothing shown in the bill that would overcome the presumption arising from the other facts alleged, that the boundaries of the lots and blocks are limited to the description in the plats, and that the lots and blocks as thus described constituted the entire interest in the land platted, purchased by individuals from the canal commissioners. They were not authorized by the statute to convey to purchasers any special interest in the streets, either legal or equitable, and it is not to be presumed that they did so in absence of averment to the contrary.

For the same reason it is clear that the owner of the lot can have no reversion in the streets, contingent or otherwise. His title does not extend beyond the limits of his lot. His

interest in the street is in common with the public. He has no such equity in the soil of the street, that in case of a vacation or abandonment of it as a way, it would, to the center thereof, revert to him under his conveyance of the adjoining lot.

At the time the streets and alleys of the city of La Salle were dedicated to public use by the canal commissioners, the law recognized the original proprietor of the site as the owner of the possible reversion in the street. That interest being a vested right in him, subsequent legislation attempting to apportion such reversion among the owners of the adjoining lots, upon the termination of the estate vested in the public, is inoperative as to him, and his prior interest remains unaffected by it. This was so held in St. John v. Quitzow, 72 Ill. 334, and re-affirmed in Gebhardt v. Reeves, 75 Ill. 301, where the court says: " The streets and alleys having been vacated by an ordinance, and the use of them abandoned, the question arises, what becomes of the fee that was in the city? Does it revert to the original owner, or does it go to his grantee of the adjacent lots? Under the previous decisions of this court, the inquiry admits of but one answer—it reverts to the original owner."

The sale of the coal to the appellee by the lot owner with the right to mine and remove the same, under the authority of Ewing v. Mining Co., 110 Ill. 290, may have conferred upon it as incident to the grant, the right to go upon the land of the grantor and dig for the coal, but in no sense can it be said that such grant can have the effect of authorizing an entry into the lands of others, either upon or below the surface, for such purpose. The grantor, as we have seen, had no such interest as would justify him in making such entry and he could not transfer any such right to appellee.

The city is the owner in fee and in possession of the land within the limits of the streets, with the power vested in it by the law to prevent encroachments upon them by individuals and we find no warrant in the law for limiting the city in the exercise of this power to the surface of the ground.

In our opinion, the city of La Salle should have been left

free to assert any legal means it may possess to prevent the threatened acts of appellee averred in the bill.

The motion to dismiss the appeal, retained until the hearing has been considered and we have come to the conclusion that a freehold is not so directly involved in this cause as to deprive this court of jurisdiction, and the motion is therefore overruled.

For the reasons stated, the decree of the court below, in so far as it is based upon that portion of the bill demurred to, is reversed and the cause remanded with directions to the circuit court to sustain the demurrer of the city of La Salle, dissolve the injunction against the city, and dismiss the bill so far as the relief asked is based upon the allegations to which the demurrer is so sustained, and the decree is affirmed in other respects.

Decree reversed in part and affirmed in part and cause remanded.