## Duff *versus* Wilson.

1. Smethers owning land subject to a mortgage, sold an undivided half clear of encumbrances, to Duff who leased his moiety to Smethers; Wilson became surety for Smethers's performance of the covenants in the lease. In a suit against Wilson as surety on Smethers's breach of his covenants, the court below rejected evidence that the land had been sold under the mortgage, and Smethers evicted by the sheriff's vendee. *Held*, to be error.

2. On the sale by the sheriff, the relation of landlord and tenant between Smethers and Duff ceased, and the sheriff's vendee might have affirmed the lease and required the rent to be paid to him.

3. There being an implied covenant for quiet enjoyment in every lease, whenever the enjoyment ceases by lawful title the rent ceases.

4. Wilson was surety only that Smethers should pay the rent; compelling Wilson to pay after the eviction, would indirectly be paying for Smethers's breach of covenant to pay the mortgage, for which he was not surety.

October 5th 1871. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the District Court of *Allegheny county:* No. 53, to October and November Term 1870.

This was an action of assumpsit, brought to April Term 1864, by Samuel Duff against Samuel Wilson. The declaration averred that the plaintiff had leased certain property to one Smethers, that the defendant became bound for the covenants in the lease, and that the tenant had failed to pay the rent.

On the trial, February 15th 1870, before Kirkpatrick, J., the plaintiff gave in evidence articles of agreement, dated September 10th 1859, between himself and Philip Smethers, by which he agreed to lease to Smethers for five years the undivided half of certain tracts of land in Clarion county, being the same which had been sold by Smethers to the plaintiff on the 5th of September 1857, with privileges specified in the agreement:—the consideration being the delivery by Smethers to the plaintiff of five pairs of flat-boats, two in each year from 1860 to 1864 inclusive, with other stipulations unimportant to the understanding of the case.

Attached to the agreement was the undertaking of the defendant as follows:—

"September 10th 1859.

"I hereby become bound to Samuel Duff for the faithful per-

[Duff *v.* Wilson.]

formance of the covenants and agreements contained in the foregoing agreement on the part of Philip Smethers in case he fails to perform the same.  SAMUEL WILSON."

The plaintiff gave in evidence the lease and the defendant's undertaking, and proved that Smethers went into possession and continued during the term and neglected to deliver the boats deliverable in the years 1863 and 1864, and proved the value of the boats; he then rested.

The defendant offered in evidence articles of agreement, dated September 5th 1857, between Smethers and the plaintiff, by which Smethers agreed to sell to the plaintiff the undivided half of the land mentioned in the lease, "being the same land described in an article between" Smethers and John and Mary B. Lyons by which they agreed to release their interest in the land to Smethers. Smethers agreeing to convey the land to the plaintiff in fee simple clear of all encumbrances, &c., for the purpose of showing that the plaintiff held title to the premises from Smethers; to be followed by evidence, that Smethers claimed an undivided moiety under Mary B. Lyons, and that Smethers and Mrs. Lyons had given a mortgage to Matilda Kifer on which there was a foreclosure and sale of one of the tracts to Henderson, to show that the tenant Smethers was ousted by a prior encumbrance.

The offer was objected to by the plaintiff, rejected by the court, and a bill of exceptions sealed.

The verdict was for the plaintiff for $3200.

The defendant took out a writ of error, and assigned for error the rejection of his offer of evidence.

*S. A. Purviance*, for plaintiff in error.—In every lease there is a covenant for quiet enjoyment; if the tenant be evicted by paramount title, he is discharged from the rent: Maule *v.* Ashmead, 8 Harris 482; Ross *v.* Dysart, 9 Casey 452; Brown *v.* Dickerson, 2 Jones 372; Bauders *v.* Fletcher, 11 S. & R. 419; Elliott *v.* Smith, 11 Harris 131; Elliott *v.* Ackla, 9 Barr 42; Rawle on Cov. for Title 264, 265 and notes, 272, 273. A surety is not to be held beyond the *precise terms* of his contract: Court of Errors, 1805, Ludlow *v.* Simond, 2 Caines's Cases 1; Penoyer *v.* Watson, 16 Johns. 100; Walsh *v.* Bailie, 10 Johns. 180; Gates *v.* McKee, 13 N. Y. (3 Kern) 232.

*L. B. Duff* and *R. Woods*, for defendant in error.—The surety cannot set up a defence which the principal could not: Barr *v.* Greenawalt, 12 P. F. Smith 172. Smethers conveyed the property to Duff, subject to an encumbrance which Smethers was bound to remove; the land being sold under this encumbrance,

[Duff *v.* Wilson.]

Smethers continued bound for the rent, and the surety was liable on his failure.

The opinion of the court was delivered, October 16th 1871, by SHARSWOOD, J.—Philip Smethers, being the owner of a tract of land in Clarion county, subject to a mortgage to Matilda Kifer, conveyed one undivided moiety thereof to Samuel Duff, clear of encumbrances. Duff then leased this moiety to Smethers for the term of five years at a certain annual rent. The defendant below, Samuel Wilson, by a writing attached to or endorsed on the lease, became bound for the faithful performance of the covenants and agreements to be done and performed on the part of Smethers. This was an action by Duff against Wilson for rent accrued under the lease.

The defendant below offered to show that the mortgage of Matilda Kifer had been sued out, the premises sold by the sheriff, and the tenant evicted by the purchaser at sheriff's sale before the rent accrued. This was objected to and rejected by the court, and this ruling forms the only assignment of error.

No doubt Smethers the tenant was bound by his covenants to pay off the Kifer mortgage, and it is therefore contended that inasmuch as this eviction was in consequence of his own default, he should not be allowed to take advantage of his own wrong in resisting on that account the payment of the rent; and if he could not, neither can Wilson his surety. There is great plausibility in this argument. But let us examine it a little more closely and see to what consequences it leads. It is not denied that, apart from his covenant to pay the mortgage, the eviction would have suspended the rent. When the title was divested from Duff and vested in the sheriff's vendee, the relation between Duff and Smethers ceased, as much so as if Duff had himself assigned the reversion to a stranger. It is always competent for a tenant to set up that the title of his landlord has come to an end subsequent to the date of the lease. The purchaser at the sheriff's sale might have affirmed the lease and required the rent to be paid to him as assignee of the reversion: Farmers' and Mechanics' Bank *v.* Ege, 9 Watts 436; Hemphill *v.* Tevis, 4 W. & S. 535. Had he done so, it can hardly be pretended that Smethers could have been compelled to pay the rent to Duff as well as the purchaser. In this case he elected to disaffirm the lease and took possession of the premises. Surely, Duff's right of recovery cannot depend upon the election of the purchaser. This is a *reductio ad absurdum*. In every lease there is an implied covenant of quiet enjoyment. Whenever the enjoyment ceases by lawful title, rent, which is the recompense of enjoyment, also ceases. Duff had a right of action against Smethers for his violation of his covenant to keep him indemnified against the mortgage. In that action he could recover such dam-

[Duff *v.* Wilson.]

ages as the law awards in such a case. If, however, he can still proceed and recover the rent accruing from time to time under the lease, as if it were still existing for the whole period which the lease may have to run, he will evidently obtain much more than such damage. Even if Smethers could plead payment of rent, subsequently to the eviction as a set-off against Duff's claim on the covenant, and it is not easy to see on what principle he could do this, how does this matter stand as regards the surety Wilson? He guarantied not Smethers's performance of his covenant to pay the mortgage, but his covenant to pay rent. Why then should he be compelled to pay what according to this argument will go indirectly to pay for the breach of another and distinct covenant which he did not undertake to guaranty? In point of fact it would seem that Smethers had put Wilson into possession of the premises for his indemnity, and it was Wilson who lost the possession by the eviction. The two claims of Duff for rent under the lease and for damages under the covenant were separate and distinct, and must not be confounded, especially to the injury of a surety. To the action for rent under the lease, the divestiture of the title of the lessor under the sheriff's sale and the consequent eviction of the tenant was a perfect legal defence. The right of the lessee to occupy and enjoy the premises under the lessor came to an end, and with it his liability to pay for such enjoyment. He cannot be charged directly or indirectly for the breach of his covenant as to the mortgage, either in part or in whole, in an action on the lease, and *à fortiori* his surety for the rent, who was in no wise surety for the covenant, shall not. We think, therefore, that the learned judge below committed an error in rejecting the testimony offered by the defendant.

Judgment reversed, and *venire facias de novo* awarded.